UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00183-LLK

LISA A. BRAY                                                                                          PLAINTIFF

v.

NANCY A. BERRYHILL, Commissioner of Social Security                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of Plaintiff and Defendant are at Dockets 13 and 18, and the case is ripe for determination.

The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. Docket 9.

Because the administrative law judge's (ALJ's) decision is supported by substantial evidence and in accord with applicable legal standards, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

## Discussion

The ALJ issued the Commissioner's final decision on December 15, 2015, finding that Plaintiff is not disabled through the date of decision. Administrative Record (AR), p. 66. Plaintiff challenges the ALJ's residual functional capacity (RFC) finding that her impairments allow performance of a limited range of unskilled, sedentary work. More specifically, Plaintiff challenges the ALJ's finding that her degenerative disc disease (DDD), gastroesophageal reflux disease (GERD), polyarthralgias, bilateral plantar and calcaneal spurring, diabetes, gout, obesity, and depressive and anxiety disorders (AR, p. 56) allow her: "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the following limitations: she can occasionally climb ramps and stairs; she can never climb ladders, ropes,

1

and scaffolds; the claimant requires the use of a cane, for ambulation; she can occasionally stoop, kneel, crouch, and crawl; the claimant requires work without concentrated exposure to vibration and hazards such as heights and moving machinery; and, the claimant can understand, remember, and carry out simple instructions." AR, p. 59.

Plaintiff makes four arguments challenging the ALJ's RFC finding.

**1. The ALJ's RFC finding adequately considered Plaintiff's need to use a cane for ambulation.**

As noted above, the ALJ found that Plaintiff "requires the use of a cane, for ambulation." AR, p. 59.

Soc. Sec. Rul. (SSR) 96-9p, 1996 WL 374185, at *7 states[1] that the occupational base for unskilled, sedentary work will be "significantly eroded" if the individual must use a hand-held assistive device, not only for ambulation, but also "for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment)." The occupational base is not significantly eroded if the device is needed only for prolonged ambulation. *Id.*

---

[1] The relevant portion of SSR 96-9p states (in its entirety) as follows:

*Medically required hand-held assistive device:* To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

Plaintiff argues that "[t]he administrative decision failed to properly weigh the effect of the requirement that [she] must ambulate with a cane upon her capacity to perform a reduced range of sedentary work pursuant to the requirements of SSR 96-9p." Docket 13, p. 2.

Plaintiff's reliance on SSR 96-9p is unpersuasive for two reasons.

First, the ALJ found and the evidence supports that Plaintiff must use a cane for prolonged ambulation but not for balance. Clinicians consistently judged Plaintiff not to be a fall risk. AR, pp. 391, 397, 498, and 500. When asked, Plaintiff denied having poor balance. AR, pp. 548, 563, and 590.

Second, the limitation of having to use a cane for ambulation was given to the vocational expert (VE) at the administrative hearing. AR, p. 115. Plaintiff was given an opportunity to cross-examine the VE on the vocational impact of also needing the cane for balance but declined to do so. Plaintiff's argument is, therefore, waived. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016) (Although the vocational hypothetical did not contain the specifics contemplated by SSR 96-9p, which had the potential of eroding the occupational base, "[b]ecause Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument"); *Robinson v. Comm'r of Soc. Sec.*, No. 1:15-cv-509, 2016 WL 3085762, at *9 (W.D. Mich. June 2, 2016) (collecting authorities for the proposition that "[t]he Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court").

**2. The ALJ's RFC finding adequately considered the results of the lumbar MRI from November 2014.**

On November 21, 2014, an MRI was taken of Plaintiff's lumbar spine. Jason White, M.D., interpreted it as revealing "disc herniation at L1-L2 resulting mild central stenosis." AR, p. 487. Dr. White recommended an MRI of the thoracic spine. AR, p. 486.

On December 5, 2014, a thoracic MRI was obtained. Michael Shadowen, M.D., interpreted the MRI as revealing: "1. Mild hypertrophic changes and scoliosis. 2. Mild broad based T11-12 disc protrusion with associated osteophytes and borderline central spinal stenosis." AR, p. 484.

Dr. Shadowen's thoracic MRI interpretation incorporated the prior lumbar MRI findings. *See* AR, p. 484 ("The upper lumbar spine is included on the study, and there is moderate bulging with central herniation of the L1-2 disc with associated mild central spinal stenosis due to disc bulging/herniation and hypertrophic changes which was noted on the 11/21/14 lumbar MRI").

Plaintiff acknowledges that the ALJ's decision "includes a review of …. [the] December 2014 thoracic MRI." Docket 13, p. 4, referring to decision at AR, p. 60, referring to MRI at AR, p. 484.

Plaintiff argues that "[t]he administrative decision fails to consider important medical [November 2014 lumbar] MRI findings when evaluating the effect of the Plaintiff's degenerative disc disease upon her [RFC]." Docket 13, p. 4.

Plaintiff's reliance on the lumbar MRI findings is unpersuasive for two reasons.

First, in reviewing the thoracic MRI findings, which incorporated the prior lumbar MRI findings, the ALJ (implicitly) considered the lumbar MRI findings when evaluating Plaintiff's RFC.

Second, even if the ALJ did not consider (or did not adequately consider) the lumbar MRI findings, Plaintiff has not met her burden of proving that such findings require a more restrictive RFC than the ALJ found. *See* 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled") and 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your [RFC]"). Neither Plaintiff nor the Court possesses the medical expertise necessary to conclude that an individual having the lumbar MRI findings at AR, pp. 486-487 would

require greater limitations than the ALJ found (or limitations that would preclude unskilled, sedentary work).[2]

**3. The ALJ's RFC finding adequately considered Plaintiff's alleged need to alternate sitting/standing.**

In July 2014, Plaintiff completed the Oswestry Pain Scale, stating, among other things, that pain prevents her from sitting "more than ½ hour." (The other choices were more than 1 hour, more than 10 minutes, and at all.) AR, p. 643. At the administrative hearing in October 2015, Plaintiff testified that she can sit "maybe about 10 minutes, 15, somewhere around through there. It depends on how bad my back is." AR, p. 94.

Plaintiff argues that "[t]he administrative decision excluded any consideration of the [her] limited ability for prolonged sitting when formulating the adjudged [RFC] despite supporting medical findings." Docket 13, p. 5.

Plaintiff's criticism of the ALJ's not considering her alleged need to alternate sitting/standing in light of her testimony and completion of the Oswestry Pain Scale is unpersuasive for four reasons.

First, Plaintiff's filling out a form and testifying to certain limitations do not constitute supporting medical findings.

Second, in noting Plaintiff's testimony that "she can sit for no longer than fifteen minutes due to her back pain" and in finding that Plaintiff's "allegations in relation to her back are less than fully credible" (ALJ's decision, AR, p. 60), the ALJ did (implicitly) consider the alleged need to alternate sitting/standing and accepted it only to the extent it could be accommodated by scheduled breaks and a lunch period. *See* Soc. Sec. Rul. 96-9p ("An individual may need to alternate the required sitting of

---

[2] The Commissioner's non-examining consultant, Douglas Back, M.D., did (explicitly) consider the November 2014 lumbar MRI findings. AR, p. 148. Dr. Back assigned fewer restrictions than the ALJ. *Compare* ALJ's RFC findings at AR, p. 59 and Dr. Back's RFC form findings at AR, pp. 147-149.

The ALJ ultimately decided to give "little weight" to Dr. Back's findings, which would have permitted performance of light work, because "the aggregate record presented suggests that the claimant's reduced mobility in her back and lower extremities, along with her overall physical pain, has reached a point that she is limited to performing work at the sedentary level." ALJ's decision, AR, p. 63. In any event, Dr. Back's completion of the RFC form illustrates that the lumbar MRI findings are not necessarily incompatible with the ALJ's RFC findings.

sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded").

Third, Plaintiff waived any criticism of the ALJ's not considering her alleged need to alternate sitting/standing by not cross-examining the VE on the matter at the hearing. *See Kepke, supra* ("Kepke argues that the ALJ failed to provide specifics (in the RFC and hypotheticals) as to the frequency of her need to alternate between sitting and standing. … Because Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument").

Fourth, any error pertaining to alternate sitting/standing was harmless because the jobs of polisher and order clerk, which the ALJ cited as representative examples of jobs Plaintiff could perform notwithstanding her limitations (AR, p. 65), apparently allow for sitting/standing at will. *See Snyder v. Comm'r of Soc. Sec.*, No. 5:13cv2360, 2014 WL 6687227, *4 (N.D. Ohio Nov. 26, 2014) ("The ALJ then asked a … hypothetical [in which] this individual would need to be able to sit or stand alternatively, at will…. [The VE] responded that there were other jobs in the national or regional economy that such a person could perform: (1) Polisher, DOT 713.684-038 … (3) Order Clerk, DOT 209.567-014"); *Hodge v. Comm'r of Soc. Sec.*, No. 14–246–DLB, 2015 WL 2041927 n. 6 (E.D. Ky. April 30, 2015) ("The VE indicated that … order clerk positions would allow a worker to alternate sitting and standing"); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result").

### 4. The ALJ's mental RFC finding was legally adequate.

Plaintiff argues that "[t]he administrative decision erred in failing to properly evaluate the Plaintiff's mental impairments and resulting functional limitations as required by 20 CFR §§ 404.1545(c), 416.945(c) and SSR 85-16 [1985 WL 56855]." Docket 13, p. 7.

These regulations and ruling state[3] that, in determining a claimant's mental RFC, an ALJ should consider the following factors, which may be relevant to ability to do past and other work: 1) ability to understand, carry out, and remember instructions; and 2) ability to respond appropriately to supervision, coworkers, and customary work pressures in a work setting.

In finding that Plaintiff's depressive and anxiety disorders limit her to understanding, remembering, and carrying out simple instructions (AR, pp. 56 and 59), the ALJ's decision (explicitly) considered Plaintiff's ability to understand, carry out, and remember instructions (factor no. 1, supra).

In declining to find an additional mental limitation, the ALJ's decision (implicitly) found that Plaintiff has no severe, or vocationally-significant, impairment affecting her ability to respond appropriately to supervision, coworkers, and customary work pressures in a work setting (factor no. 2). For the reasons below, this finding of a non-severe mental impairment was supported by substantial evidence.

In November 2014, Ollie C. Dennis, Ed.D., examined Plaintiff at the Commissioner's request. In his narrative report, Dr. Dennis found "mild" to "moderate" limitations in the areas of understanding and remembering one and two stage instructions; sustaining attention to complete tasks; social interaction; and capacity to adapt to pressures of normal daily work activity. AR, p. 459.

---

[3] 20 CFR §§ 404.1545(c) and 416.945(c) state:

(c) *Mental abilities.* When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

SSR 85-16 states, in pertinent part:

Regulations No. 4, section 404.1545(c)/416.945(c), presents the broad issues to be considered in the evaluation of RFC in mental disorders. It states that this evaluation includes consideration of the ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and customary work pressures in a work setting. Consideration of these factors, which are contained in section 12.00 of the Listing of Impairments in Appendix 1, is required for the proper evaluation of the severity of mental impairments.

7

In December 2014 and March 2015, based, in part, on Dr. Dennis' findings, the non-examining state-agency program psychologists, Sanford Golin, Ph.D., and Christi Bruening, Ph.D., completed the psychiatric review technique (PRT) form, finding that Plaintiff has: "mild" restriction of activities of daily living; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence, or pace; and "no" repeated episodes of decompensation (each of extended duration). AR, pp. 135 and 158.

In so finding, the program psychologists found no severe, or vocationally-significant, mental impairment. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities").

Alternatively, even if the ALJ did err in not finding a vocationally-significant limitation in Plaintiff's ability to respond appropriately to supervision, coworkers, and customary work pressures in a work setting, the ALJ was not required to find a <u>disabling</u> degree of limitation (i.e., one that would be expected to preclude all unskilled, sedentary work). A remand, therefore, is inappropriate. *See Kornecky, supra* ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result").

**ORDER**

The Commissioner's final decision is AFFIRMED, and Plaintiff's complaint is DISMISSED.